FILED _____ LODGED
RECEIVED _____ COPY

NOV 08 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Benton G. Baskin, I/M #52888
Name and Prisoner/Booking Number

Saguaro Correctional Center
Place of Confinement

1252 E. Arica Rd.
Mailing Address

Eloy, Arizona 85131
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

BENTON GENE BASKIN                    ,
(Full Name of Plaintiff)

            Plaintiff,

v.

(1) TODD THOMAS, et al,                 ,
(Full Name of Defendant)

(2) "and others"                        ,

(3) _____      ,

(4) _____      ,

            Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. **CV21-01890-PHX-SPL--JFM**

(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
**BY A PRISONER**

"JURY TRIAL DEMANDED"

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A.  JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
    ☐ Other: _____.

2.  Institution/city where violation occurred: CoreCivic/Saguaro Correctional Center, Eloy .

Revised 3/11/16

1

**550/555**

X check if there are additional Defendants and attach page 1-A listing them.

GERALD WALKER,

MARCI GOTTFREDSON,

UNKNOWN WESTBROOK,

DANIEL SCHNURR,

OFFICER GIABOIAN,

OFFICER DIAZ,

      Defendant(s).


## A.   JURISDICTION & VENUE

2A.   This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation under the color of state law of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. 1331 and 1343(a)(3).  Plaintiff Baskin, seeks also compensatory and punitive damages pursuant 28 U.S.C. Section 2201 and 2202.  Plaintiff Baskin claim for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 under Rule 65 of the Fedeal Rules of Civil Procedure.

1-A

## B.  DEFENDANTS

1. Name of first Defendant: __Todd Thomas_____. The first Defendant is employed
as: __Warden / Regional Director_____ at __CoreCivic/Saguaro Correctional Center__
                    (Position and Title)                                                          (Institution)

2. Name of second Defendant: __Gerald Walker_____. The second Defendant is employed as:
as: __LPN_____ at __CoreCivic/Saguaro Correctional Center__
                    (Position and Title)                                                          (Institution)

3. Name of third Defendant: __Marci Gottfredson_____. The third Defendant is employed
as: __RN_____ at __CoreCivic/Saguaro Correctional Center__
                    (Position and Title)                                                          (Institution)

4. Name of fourth Defendant: __Unknown Westbrook_____. The fourth Defendant is employed
as: __Supervisor_____ at __TransCorporation of America_____.
                    (Position and Title)                                                          (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.  PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?        ☐ Yes        ☒ No

2. If yes, how many lawsuits have you filed? __N/A__. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
         _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
         _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
         _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

**If you name more than four Defendants, answer the question listed above for each additional Defendant on a seperate  page.**

5.     Name of fifth Defendant: Daniel Schnurr.  The fifth Defendant is employed as: _____Warden_____ at  Hutchinson Correctional Facility Central.

6.     Name of sixth Defendant: S.O.R.T. Officer Giaboian.  The sixth Defendant is employed as: Special Operations Response Team Lieutenant at  Hutchinson Correctional Facility Central.

7.     Name of seventh Defendant: S.O.R.T. Officer Diaz.  The seventh Defendant is employed as: Special Operations Response Team Seargent at  Hutchinson Correctional Facility Central.

2-A

## D.  CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: _Eighth Amendment to the United States Constitution_.

2. **Count I**.  Identify the issue involved.  Check **only one**.  State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☒ Medical care
   - ☐ Retaliation

3. **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.   _See Attached Page 3-A Section F. Facts supporting Count I ¶. 17-69_

4. **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
   _Please refer to ¶. 20-45_

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level?  ☐ Yes  ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.  _Defendant Thomas, Impeded the Saguaro Correctional Center 14-5B Grievance Procedure and Appeal Process. Refer to ¶. 107-108_

3

2.    The District of Arizona ia an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## B.    PLAINTIFF

3.    Plaintiff Baskin, is and was at all times mentioned herein a Prisoner of the State of Kansas in the custody of the Kansas Department of Corrections, via (ICC) Interstate Corrections Compact to Contract Private Prison CoreCivic/Saguaro Correctional Center, 1250 E. Arica Road, Eloy, Arizona.

## C.    DEFENDANT(S)

4.    Defendant Todd Thomas, was the Warden of CoreCivic/Saguaro Correctional Center  and has been promoted to the Regional Director of the Arizona Complex.  He was legally responsible for the operation of Saguaro Correctional Center, along with the new warden Martin Frink, whom share responsibility for the welfare of all inmates housed in that prison.

5.    Defendant Gerald Walker, is an (LPN) Licensed Practicing Nurse for CoreCivic Health Services at Saguaro Correctional Center, who at all times mentioned in this complaint held the rank of LPN and was responsible for providing Medical Care and Treatment to all inmates housed in that prison and assigned to Saguaro Correctional Center.

6.    Defendant Marci Gottfredson, is an (RN) Registered Nurse for CoreCivic Health Services, assigned to Saguaro Correctional Center, who at all times mentioned in this complaint held the rank of RN and was responsible for providing Medical Care and Treatment to all inmates housed in that prison.

7.    Defendant Mr. Westbrook, is an employee of Tans-Corporation of America, who at all times mentioned in this complaint held the rank of Supervisor and was assigned to Transport Plaintiff Baskin, from Salina, Kansas to Eloy, Arizona.

8.    Defendant Mr. Giaboian, is an (SORT) Special Operations Response Team Officer at Hutchinson Correctional Facility Central, who at all times mentioned in this complaint held the rank of S.O.R.T. Officer and was assigned to Hutchinson Correctional Facility Central, whom initially applied the waist, wrist, and leg restraint(s) on Plaintiff Baskin, and refused to re-adjust them. He is responsible for Safety, Security, Transport, and applying the physical waist, wrist, and leg restraint(s) on Inmate(s) designated to be Transported and Transferred out of Facility.

9.    Defendant Mr. Diaz, is a (SORT) Special Operations Response Team Officer at Hutchinson Correctional Facility Central, who at all times mentioned in this complaint held rank of S.O.R.T. Officer and was assigned to Hutchinson Correctional Facility Central, whom also refused to re-adjust the waist, and wrist restraint(s). He is also responsible for Safety, Security, Transport, and applying physical waist, wrist, and leg restraint(s) on Inmate(s) designated to be transferred out of Facility, whom also operated the Transport Vehicle to El Dorado Correctional Facility Central and Airport at Salina, Kansas.

## D.    PREVIOUS LAWSUITS

10.    Have you filed any other lawsuits while you were a prisoner?    _____ Yes    _X___ No

### E.   CAUSE OF ACTION

### COUNT I

11.   State the constitutional or other federal civil right that was violated: Eighth Amendment Right to the United States Constitution.

12.   **COUNT I.**   Identify the issue involved.  Check **only one.**  State additional issues in seperate counts.

   __X__   Medical Care

### COUNT II

13.   State the constitutional or other  federal civil right that was violated: Eighth Amendment Right to the United States Constitution.

14.   **COUNT II.**   Identify the issue involved.  Check **only one.**  State additional issues in seperate counts.

   __X__   Other: Cruel & Unusual Punishment/Unnessary Wanton Infliction of Pain

### COUNT III

15.   State the constitutional or other federal civil right that was violated:  Eighth Amendment Right to the United States Constitution.

16.   **COUNT III.**   Identify the issue involved. Check **only one.**  State additional issues in seperate counts.

   __X__   Other: Deliberate Indifference

### F.   FACTS

17.   At all times relevant to this case, Plaintiff Baskin, was housed in  E-Dorm Cellhouse Dormitory at Hutchinson Correctional Facility Central, in Hutchinson, Kansas prior to being (ICC) Interstate Corrections Compact to Contract Private Prison CoreCivic/Saguaro Correctional Center, in Eloy, Arizona.

18.   On October 23rd, 2019, at approximately 3:00 a.m. (S.O.R.T.) Special Operations Response Team Officer(s) escorted Plaintiff Baskin, to (A&D) Admissions and Discharge for processing and preparation of being strip-searched and dressed out in the required orange paper/cloth jumpsuit for tranfer.

19.   Upon entering the strip-search area in (A&D) Lieutenant Dawes, (acting S.O.R.T. Officer) allowed Plaintiff Baskin, to consume the Pepsi beverage, and Reese's pieces candy that was in his possession upon arrival. Once consumed Plaintiff Baskin, was then directed to enter the strip-search partitions to forego a full strip search of his person. After completion Plaintiff Baskin, was then

directed to proceed to the area where other (S.O.R.T.) Officer(s) were applying waist, wrist, and ankle restraint(s) to the awaiting inmates.

20.   Defendant (S.O.R.T.) Special Operations Response Team Officer Mr. Giaboian, was the Officer whom is responsible for applying the waist, wrist, and ankle restraint(s) on Plaintiff Baskin, upon Defendant Giaboian securing the waist chain, Plaintiff Baskin, immediately alerted Defendant Giaboian, that due to the nature Plaintiff Baskin, had such a slim waist and thick stomach area, if Defendant Giaboian, would loosen the slack, so that Plaintiff Baskin, could raise his arms and hands to his mouth, so that he could consume the sack lunch provided for breakfast. Defendant Giaboian, aggressively directed Plaintiff Baskin, to hold his arms level with his waist, upon following the directive given, Defendant Giaboian applied the waist, wrist and ankle restraint(s) on Plaintiff Baskin's wrists' and ankles.

21.   Plaintiff Baskin, made a respectful request to Defendant Giaboian, to loosen the wrist and waist restraint(s), due to the nature Plaintiff Baskin had difficulty raising his arms level enough for Defendant Giaboian, to secure the security balck box over the eye-let connecting the chain to the waist and wrist restraint(s), which were secured with a pad lock. Defendant Giaboian, attempted to place one of his fingers between an imaginary space seperating Plaintiff Baskin's wrists' from the restraints, upon which Plaintiff Baskin, immediately requested Defendant Giaboian, to loosen because they were too tight. Plaintiff Baskin, assertively stated to Defendant Giaboian, that his hands were bigger than his wrist. Defendant Giaboian, then sarcastically stated that the cuffs were not built for comfort, and in an rude and aggressive tone gave Plaintiff Baskin, a direct order to board the transport vehicle.

22.   Upon boarding and being seated on the transport vehicle, Plaintiff Baskin, immediately made a plea for Defendant (S.O.R.T.) Special Operations Response Team Officer Mr. Diaz, if he would please loosen his wrist restraints, as they were cutting into his arms and wrists'. Defendant Diaz, replied: "why didn't you have the officer who put them on you, to loosen them up?" Plaintiff Baskin, then responded that he did request for Defendant Giaboian, to loosen the cuffs, but the officer refused to comply with Plaintiff Baskin's request. Defendant Diaz, seemingly ignored Plaintiff Baskin, due to the nature he did not respond. Frustrated, Plaintiff Baskin, sat down and endured the physical and emotional.

23.   Approximately 5 minutes elapsed before Defendant Diaz, and another unknown (S.O.R.T.) Officer unboared the transport vehicle and returned back inside Hutchinson Correctional Facility Central Unit to (A&D) Admissions and Discharge. After about 15-20 minutes elapsed, and Upon Defendant Diaz, and another unknown (S.O.R.T.) Officer re-boarding the transport vehicle, whom possessed a milk crate and an industrial sized cooler containing sack lunches, once each inmate received a sack lunch and milk. Plaintiff Baskin, again made a plea for Defendant Diaz to loosen his wrist restraint(s), Upon receiving No response, Plaintiff Baskin, then posed a question to both officer(s) how was he supposed to eat when he could not lift his hands up to his mouth to consume the breakfast sack lunch provided to him. No response was given.

24.    Plaintiff Baskin, and Declarant Bemis noticed that Plaintiff Baskin's arms beginning to swell enormously and that the right wrist cuff began to cut into his right wrist, obviously in great pain Plaintiff Baskin began to make a more serious and urgent plea for Defendant Diaz, to attend to and adjust the wrists' restraints, whom again seemingly ignored the urgency in Plaintiff Baskin's voice, replied: "Be patient, we have a short ride ahead of us, we will get you taken care of then.

25.    Defendant Diaz, and the Unknown (S.O.R.T.) Officer, ignored Plaintiff Baskin's urgent request, and was forced to travel from Hutchinson Correctional Facility Central to El Dorado Correctional Facility Central. During the 1 1/2 hour trip, Plaintiff Baskin was forced to endure mental, emotional, and physical pain stemming from the wrists' restraints which were causing swelling and injury to Plaintiff Baskin's wrists.

26.    Upon arrival at El Dorado Correctional Facility Central, Defendant Diaz, and the Unknown (S.O.R.T) Officer checked in their weapons at the security tower, at  which point, Plaintiff Baskin began to irritably complain to the Unknown (S.O.R.T.) Officer and Defendant Diaz, about the swelling of his wrists' and the pain he was enduring, both Officers diverted the request about loosening the wrist restraints, and was again ignored by Defendant Diaz, and the Unknown Officer.

27.    After passing the inspection point, Defendant Diaz, drove the transport vehicle inside the sally port and docked the vehicle at the designated area.

28.    Approximately 15-20 minutes elapsed before Plaintiff Baskin, and 29 other inmate(s) were given the directive to un-board the transport vehicle and enter into El Dorado Correctional Facility Central (A&D) Admissions and Discharge area, once inside the lighted holding cell Plaintiff Baskin and other Inmate(s) observed his wrists' and arms in utter disbelief, due to the nature Plaintiff Baskin's wrists' and arms were swollen beyond normailty.

29.    Plaintiff Baskin, began to speak through the crack of the holding cell door in an attempt to make a plea to the El Dorado Correctional Facility (S.O.R.T.) Officers, to garner their attention in regard to the swelling of Plaintiff Baskin's wrists' and arms, but to no avail did any of them respond, another 15-20 minutes elapsed.

30.    Upon standing up and looking out of the holding cell glass door, Plaintiff Baskin noticed another transport vehicle dock in the transport area, while witnessing the sally port door open and close, Plaintiff Baskin, spotted a familiar face of an Hutchinson Correctional Facility Central (S.O.R.T.) Officer Reau.

31.    Hutchinson Correctional Facility S.O.R.T. Officer Reau, signaled for the door to be opened, Plaintiff Baskin, was then directed by Mr. Reau to enter into the seating area, where he attempted to remove the wrists' restraints, so that he could re-adjust them, with a certain degree of difficulty Mr. Reau, was successful, he then noticed how swollen and red Plaintiff Baskin's wrists' and arms were, after attempting to re-apply the wrist restraints, and again experiencing difficulty in re-applying the restraints, Mr. Reau, came to the conclusion that they were too small, upon sucessfully applying the wrists' restraints, Mr. Reau decided to click each wrist restraint and secured the waist and wrist restraints. Mr. Reau, reaffirming his statement of the restraints being too small, Mr. Reau, to the appealed El Dorado S.O.R.T. Officers that Plaintiff Baskin needed bigger hand cuffs.

32.    Upon Hutchinson Correctional Facility S.O.R.T Officer Reau, informing and notifying the El Dorado Correctional Facility Officers about the condition of Plaintiff Baskin's wrists' and arms, Plaintiff Baskin, was returned to the holding cell, after being seated for a short period of time, the

holding cell door opened and an El Dorado Correctional Officer gave Plaintiff Baskin a directive to exit the holding cell and followed him to the Nurse's Station, whereupon Plaintiff Baskin's vitals were taken.

33.   The E.D.C.F. Corizon Contracted Medical Provider/Nurse asked Plaintiff Baskin, if he was taking any Medications and/or were Blood Pressure Medication, due to the nature of Plaintiff Baskin's extremely high Blood Pressure. The Unknown Nurse further questioned Plaintiff Baskin, about whether or not if he was okay. Plaintiff Baskin, stated "No" and that he was having an anxiety attack due to the restriction of blood flow through his wrists', arms, and hands.

34.   Plaintiff Baskin, made a plea to the Nurse/Medical Provider and the E.D.C.F. Officer to assist him with being fitted with larger hand cuffs, Both Nurse & Officer deflected the responsibility upon Defendant Diaz, and that there was nothing that they could do about the swelling and cuffs cutting into My wrists' and arms, thereby ignoring Plaintiff Baskin's request, and escorted him back into the holding cell without relief.

35.   Plaintiff Baskin, was forced to endure the cruel & unusual punishment, unnecessary wanton infliction of pain, and deliberate indifference displayed by Corizon Medical Provider, E.D.C.F. Officers, Defendant Diaz, and Unknown S.O.R.T. Officer. Plaintiff Baskin, was forced to continue to endure the physical & emotional pain, until all of the Inmate(s) scheduled to be transported from E.D.C.F. and H.C.F. were processed and fitted with the Physical Wrist, Waist, and Ankle Restraint(s) to be transferred to the Salina, Kansas Airport and then to CoreCivic/Saguaro Correctional Center, in Eloy, Arizona.

36.   Defendant Diaz, and co-worker Unknown S.O.R.T. Officer, departed from Hutchinson Correctional Facility Central Unit at 3:00 a.m. arrived at El Dorado Correctional Facility Central at approximately 4:30 a.m. and did not depart from E.D.C.F until 6:00 a.m.

37.   Plaintiff Baskin, again attempted to stress the urgency to Both Defendant Diaz, and co-worker about having his waist & wrist cuffs adjusted to just one click and of the swelling of his arms and wrists'. Plaintiff Baskin, then posed the question about the amount of travel time between E.D.C.F., and the Airport in Salina, Kansas, Both Defendant Diaz & co-worker ignored Plaintiff Baskin, while turning up the radio and heater, in an attempt to thwart the complaints of Plaintiff Baskin.

38.   Upon arriving at the designated Airport in Salina, Kansas; Plaintiff Baskin, asked Defendant Diaz about what time of day it was becoming, and he stated 8:00 a.m., Plaintiff Baskin, then attempted to communicate with Defendant Diaz about the effects the wrist restraints were having on Him, further posing the questionof how was He suppose to consume the breakfast sack lunch, due to the nature He could not reach His mouth. Defendant Diaz, again ignorged Plaintiff Baskin.

39.  Approximately 30 minutes elapsed before two (2) unknown Men boarded the Kansas Department of Corrections Transport Vehicle, announcing themselves as Employees of (TCA) Trans-Corporation of America, The Supervisor stated that his name was Mr. Westbrook.

40.  Plaintiff Baskin, then expressed his concerns to Defendant Westbrook, about issue causing the swelling of his wrists' and arms, also the pain he was enduring and the Deliberate Indifference displayed by Defendant Diaz and Co-worker.  Defendant Westbrook, stated that as soon as the plane is ready to be boarded, his employees would make the necessary adjustments to each Inmate's Wrist Restraints.

41.  Plaintiff Baskin, was forced to sit and endure pain for at least an hour and a half, due to the nature more Transport Vehicles & Vans were due to arrive from Kansas Department of Corrections Prison(s) Hutchinson Correctional Facility, Lansing Correctional Facility, El Dorado Correctional Facility, and Ellsworth Correctional Facility, to the designated Airport and loading area  in Salina, Kansas.

42.  Upon Multiple Transport Vehicles and Vans arriving and parking in the Terminal Parking Lot, the doors of the Transport Vehicle carrying Plaintiff Baskin, opened, Defendant Westbrook, directed Plaintiff Baskin, and the other Inmate(s) to Pair up into groups of three (3), Plaintiff Baskin, inquired with Defendant Westbrook, if He could bring his breakfast sack lunch aboard the Plane, Defendant Westbrook, denied Plaintiff Baskin's request, Declarant Payne, then opened some of the food items in Plaintiff Baskin's sack lunch and began to assist him with consuming the chips and apple from the sack lunch and the rest was thrown away.

43.  Upon exiting the Transport Vehicle, Plaintiff Baskin, was chained to two (2) other Inmates, whom are Declarant Bemis, and Moore. During the chaining process, Plaintiff Baskin, again stressed with urgency and respectfully requested that the Trans-Corporation of America staff, check his wrists' restraints to observe how tight they were and the effects they were having on Plaintiff Baskin's wrists' and arms, and asked since they were making adjustments, if they would take care of the restrainst now, an unkown Trans-Corporation Employee stated that someone would take care of Plaintiff Baskin, upon being seated on the Airplane.

44.  Noticing Plaintiff Baskin's look of defeat and hearing his sigh of despair Defendant Westbrook, reassured Plaintiff Baskin, that his staff would make the necessary adjustments to the physical restraints once aboard the Plane. Upon being seated in the back of the Plane on the wing section, Plaintiff Baskin, continued to irritabaly complain about the swelling of his arms and the injuries to his wrists' as well as the pain he was enduring, conveying such, to each (TCA) Trans-Corporation of America employee whom was responsible for the seating arrangements of the Inmate(s).

45.  Plaintiff Baskin's, pleas for relief fell upon deaf ears, as each Employee of Trans-Corporation of America, Plaintiff Baskin, encountered ignored his request to have his wrist restraints re-adjusted. When Plaintiff Baskin, asked an Unknown (TCA) Employee about what time of day it was becoming, the unknown employee, responded 9:00 a.m., Plaintiff Baskin had now been suffering for a total of time of aproximately six (6) hours.

46.  Upon all of the Transport Vehicles and Vans traveling from various parts of the Kansas Department of Corrections Facilities, arrived at the Salina, Kansas Airport with Inmate(s) scheduled to be flown to CoreCivic/Saguaro Correctional Center, in Eloy Arizona, The Trans-Corporation of America Staff continued to seat Inmate(s) until the Airplane was at it's max seating capacity. Once

all of the necessary paperwork and property was loaded onto the Plane, the Pilot(s) and the entire Miami Air/Trans-Corporation of America Staff also boarded the Plane.

47.   At approximately 11:30 a.m., Defendant Westbrook made an announcement for everyone to locate their seat belts and fasten themselves in. Several minutes later the Pilot initiated the ignition of the Plane's engines, simultaneously Defendant Westbrook announced over the P.A. System that He and jis Staff would begin to adjust everyones wrists' restraints that were too tight. The Trans-Corporation of America Staff began at the front of the Aircraft.

48.   Plaintiff Baskin, observed Defendant Westbrook, walking down the isle towards his seating arrangement, Plaintiff Baskin, then respectfully engaged Defendant Westbrook, in conversation and diverted his attention to the swelling of Plaintiff Baskin' arms  and the cutting of His wrists' to relieve the unnecessary wanton infliction of pain stemming from the wrist restraints.

49.   Defendant Westbrook, made an unnecessary and sarcastic remark to Plaintiff Baskin, stating: "If you ask me one more time about lossening those cuffs, I will leave them like they are." Declarant(s) Moore, Bemis and McCaslin, witnessed Defendant Westbrook, make the statements, which reveals his actions of deliberate indifference, before walking away and not addressing Plaintiff Baskin's safety and health concerns.

50.   Frustrated and in great pain Plaintiff Baskin, continued to endure the unnecessary wanton infliction of pain caused by the wrists' restraints until, an Unknown (TCA) Trans-Corporation of America Employee stopped at Plaintiff Baskin's seating section, and instructed Plaintiff Baskin, Declarant(s) Moore, and Bemis to unfasten their seat belts before stepping into the isle, so that He could access all of the conjoining chains, upon removing the waist chains on Plaitiff Baskin, and the Black Security Block, the Unknown (TCA) Employee was then able to access Plaitiff Baskin's wrists' restraints.

51.   Upon the Unknown (TCA) Employee discovering the severity of Plaintiff Baskin's injuries to his wrists' and the extreme swelling of his arms, the (TCA) Employee conveyed to Defendant Wetsbrook, that He needed some "Big-Boy Cuffs" for Plaintiff Baskin, Defendant Westbrook, stated that he didn't have any on him, the Unknown (TCA) Employee, then responded that ther were some up front.

52.   Defendant Westbrook, ordered the Unknown (TCA) Employee to remove Plaintioff Baskin's Wrists' restraints, and re-apply them with just one click, following the directive given, the (TCA) Employee still noticed that the adjustment didn't solve Plaintiff Baskin's issues with the hand cuffs. The (TCA) Employee then re-applied the physical waist and wrists' restraints on Plaintiff Baskin, and Declarant(s) Moore and Bemis, while reassuring Plaintiff Baskin that He would see about getting the "Big-Boy Cuffs" from up front as soon as he received authorization from Defendant Westbrook.

53.   Plaintiff Baskin, made a respectful request to the Unknown (TCA) Employee to at least place the waist chain above his stomach, which would allow Him to consume the sack lunch that was being provided, the (TCA) Employee complied with My request and re-applied the connecting chains to Plaintiff Baskin, Declarant(s) Moore and Bemis, before being re-seating.

54.    Plaintiff Baskin, sat and continued to endure the unnecessary wanton infliction of pain and swelling before falling into state of unconsciousness while still in flight, and upon awakening, as well as making observations of his surroundings, Declarant McCaslin, looked over at Plaintiff Baskin, and raised his arms to reveal that the (TCA) Staff had exchanged his steel restraints with white plastic zip tie hand cuffs. Declarant McCaslin, assertively stated to Plaintiff Baskin, "make them change yours too."

55.    Upon receiving the information Plaintiff Baskin, began to visually inspect the Aircraft in hopes of sighting the Unknown (TCA) Employee, after a few minutes of searching, Plaintiff Baskin spotted the Unknown (TCA) Employee emerging from the rear of the Airplane, Plaintiff Baskin, immediately garnered the attention of the Employee and reminded him of his assurance to supply Plaintiff Baskin with the "Big-Boy Cuffs", as well as posed the question, whether or not he could issue Plaintiff Baskin the same cuffs that were applied on Declarant McCaslin, the Unknown (TCA) Employee stated: "Sorry, we gave them all out." Plaintiff Baskin, continued to express his concerns, and inquired why he wasn't the first inmate addressed due to the nature of his injuries and swelling, and the pain he was enduring, the Unknown (TCA) Employee apologized and walked away.

56.    Plaintiff Baskin, then seemingly defeated continued to endure the cruel & unusual punishment, unnecessary wanton infliction of pain, and the deliberate indifference displayed by Defendant Westbrook, and the Unknown (TCA) Employee, during the entire Plane ride from Salina, Kansas to the Arizona Airport.

57.    Upon landing at the designated Airport in Arizona, Plaintiff Baskin was forced to be seated on the Aircraft for ar least an hour and a half, untill all of the CoreCivic/Saguaro Correctional Center Transport Vehicles, Vans, and Contracted Limousine Transport Vehicles arrived were loaded with Kansas Department of Corrections Contract Inmates.

58.    Plaintiff Baskin, unable to contain the pain he was enduring again, asserted to Defendant Westbrook and the Unknown (TCA) Nurse about the condition of his arms and wrists', Defendant Westbrook, response was: "You will get them taken off, as soon as we get to the facility." The Unknown (TCA) Nurse, noticed the frustration and pain in Plaintiff Baskin's voice, advised Plaintiff Baskin to be patient, and that she understood, and cautioned Plaintiff Baskin, not to get too worked up, because of possible retaliation from the prison. Plaintiff Baskin, then subsided from any more complaining and was forced to travel uncomfortably for about an hour and a half until reaching the destination of Eloy, Arizona.

59.    Upon arriving at CoreCivic/Saguaro Correctional Center, Plaintiff Baskin had to endure another hour plus delay, due to the nature that each Transport Vehicle, Van, and Contracted Limousine Vehicle, had to pass security inspections, once all of the Vehicles were cleared for Safety, CoreCivic Security Staff unloaded the 119 (KDOC) Inmates  and Plaintiff Baskin, whom were all escorted into the back door of Saguaro Correctional Center, Cell Block Kilo Bravo.

60.    Plaintiff Baskin, was then escorted through a maize of security ex-ray check points and K-9 unit cage search, before CoreCivic Officers removed Plaintiff Baskin's physical waist, wrists' and ankle restraints.

61.    Upon removing the paper-cloth orange jumpsuit, Plaintiff Baskin was strip-searched and directed to stand in line with only his boxer underwear and black croc sandals, during these series of events Plaintiff Baskin, was greeted by Defendant Thomas. Plaintiff Baskin, directed Defendant Thomas' attention to the swelling of his arms and the injuries to his wrists' caused by the wrist

restraints and the deliberate indifference shown by (TCA) Supervisor Defendant Westbrook.

62.   Defendant Thomas observed the enormous swelling of Plaintiff Baskin's arms revealing blisters and cuts that were on Plaintiff Baskin's wrists'. Defendant Thomas then expressed his empathy with a few expletives and assured Plaintiff Baskin, that he would take care of the situation.

63.   Defendant Thomas, then directed Plaintiff Baskin to seek his Medical Staff for care and treatment after the completion of the ex-ray and check points were completed.

64.   Upon Plaintiff Baskin, completing the check points, he was seen by CoreCivic Health Services Nurse Mrs. Alexander, whom refused to treat Plaintiff Baskin for his wounds and blisters, but advised Plaintiff Baskin to submit a 13-80A3 Sick Call Request-Face to Face Encounter upon  being assigned to housing.

65.   Plaintiff Baskin, was housed in Kilo Bravo Cell KA-04L, Security Threat Group Lt. A. Perez, took photos of Plaintiff Baskin's injuries, Plaintiff Baskin asked Lt.  Perez if would be willing to give him photos of his injuries he stated yes. when asked if he could help Plaintiff Baskin get treatment, his response was what did Defendant Thomas tell you. Plaintiff Baskin was forced to sleep with exposed cuts, and awakened with his arms and wrists' stuck to the bedding, Plaintiff Baskin alerted the Saguaro Correctional Staff about his injuries whom stated that there was nothing they could do until Orientation was over. Plaintiff Baskin then requested a sick call form a male Saguaro Correctional Officer on October 27, 2019, Plaintiff Baskin filled out the 13-80A3 Sick Call request and gave it to the Saguaro Correctional Officer whom allegedly turned it in.

66.   During the Orientation process Plaintiff Baskin, was directed to report to CoreCivic Health Services Clinic, upon receiving a vital check from Defendant Walker (LPN), Plaintiff Baskin assertively requested medical attention to his cuts and swelling, Defendant Walker, stated that there was noting he could do besides allow the cuts to heal on their own, Plaintiff Baskin requested some antibiotic ointment, gauze and/or band aids, to protect his cuts from becoming infected, Defendant Walker denied Plaintiff Baskin's request.

67.   Due to the nature that Plaintiff Baskin did not receive a response from the 13-80A3 Sick Call submitted on October 27, 2019, He submitted another 13-80A3 Sick Call on November 1, 2019. Plaintiff Baskin, did not receive Medical Treatment also did not receive a pass to CoreCivic Health Services until November 15, 2019, whereupon Defendant Gottfredson (RN), stated that it was too late to treat Plaintiff Baskin's wounds, and refused to provide with her name and title.

68.   On November 20, 2019, Plaintiff Baskin submitted an Inmate Request Form to CoreCivic Health Services Administrator Ms. E. Barajas to obtain Defendant Gottfredson's name and title, as well as have Photo Documentation and/or Anatomical Drawings to acurately depict the injuries to Plaintiff Baskin's wrists' and arms. The Copies of Anatomical Drawings were received on December 6, 2019 from CoreCivic Health Services Nurse Ms. A. Thronesbery.

69.   On January 7, 2020, Plaintiff Baskin submitted an Inmate Request to STG Lt. A. Perez requesting color photo copies to document His injuries, for the sole purposes of filing a 42 U.S.C. § 1983, also reminding him of the request sent in November 2019, and the follow up conversation had between him and Plaintiff Baskin on December 2019.

## G.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

70.   The P.L.R.A. States that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies available aare exhausted." 42 U.S.C.A. § 1997e(a).

71.   The P.L.R.A. Also states that "[n]o federal action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. 1997e(e).

72.   On November 5, 2019, Plaintiff Baskin, submitted a request for services to Defendant Thomas, whom granted Plaintiff Baskin authorization to proceed with CoreCivic/Saguaro Correctional Center 14-5B Grievance Procedure in accordance with the available administrative remedies for the Eighth Amendment Violation(s) stemming from CoreCivic Health Care Provider(s) Defendant Walker, (LPN) and Defendant Gottfredson, (RN), denial of Medical Treatment for Plaintiff Baskin.

73.   On November 16, 2019, Plaintiff Baskin, then utilized the Prisoner Grievance Procedure available at CoreCivic/Saguaro Correctional Center titled Form 14-5B, Plaintiff Baskin, presented the facts relating to this complaint, in an attempt to resolve, and exhaust all available administrative remedies prior to filing under 42 U.S.C. § 1983 for the Eighth Amendment Violation(s) for Denial of Medical Treatment, Deliberate Indifference, and Mental/Emotional/Physical injury. Plaintiff Baskin did not receive an answer or response from Defendant Thomas within the 15 day response period of 14-5B Grievance, nor did Defendant Thomas provide justification for an extension in accordance with CoreCivic/Saguaro Correctional Center Policy under 14-5C Grievance Extension Notification Form.

74.   On December 3, 2019, Plaintiff Baskin, conversed with Defendant Thomas, during a Town Hall Metteing held in Kilo Alpha, with Declarant(s) Amman-Rue El, and Colbert were present, whereupon Plaintiff Baskin, asked Defendant Thomas, did he receive the Grievance submitted on November 16, 2019, whom stated that the Grievance was on his desk, and if Plaintiff Baskin, did not receive an answer in a timely fashion, then to let Defendant Thomas know at the next town hall meeting scheduled in Kilo Alpha Housing Unit.

75.   Consequently, during the town hall meeting Plaintiff Baskin, also conversed with Kansas Contract Monitor(s) Ms. Sisco and Ms. L. Wildermuth, whom were notified of Defendant Thomas' failure to abide the policy and procedure of CoreCivic/Saguaro Correctional Center for Grievance(s) filed by (KDOC) Kansas Department of Corrections (ICC) Interstate Corrections Compact Contract Inmate(s). Both Kansas Contract Monitor(s) were made aware of the Grievance(s) filed at CoreCivic/Saguaro Correctional Center and Kansas Department of Corrections Grievance at Hutchinson Correctional Facility Central, submitted on November 14, & 16, 2019.

76.   Kansas Contract Monitor(s) Ms. Sisco and Ms. L. Wildermuth, observed Plaintiff Baskin conversing with Defendant Thomas, Acknowledging that the Grievance was on his desk. Plaintiff Baskin then provided Kansas Contract Monitor Ms. L. Wildermuth a physical copy of the Kansas Department of Corrections Grievance Form, whereupon Ms. Wildermuth, provided Plaintiff Baskin with a Receipt of said Grievance and signed an attached verification form formatted and perfected by Plaintiff Baskin.

77.   Before the town hall meeting concluded Plaintiff Baskin, informed Defendant Thomas that the grievance had exceeded the Mandatory (15) Business days, and that Plaintiff Baskin did not receive an Extended Response from Defendant Thomas, to meet the deadline to allow for more time to complete an investigation on Plaintiff Baskin's Claim(s) outlined in the "Emergency Grievance" filed on November 16, 2019, nor received Justification for an extension in accordance with Saguaro Correctional Center Form 14-5C Grievance Extension Notice.

78.   On December 11, 2019 Plaintiff Baskin submitted an Inmate/Resident Request to CoreCivic/Saguaro Correctional Center Grievance Coordinator Mr. J. Valenzuela, inquiring if He would retrieve the "Emergency Grievance" filed on November 16, 2019, from Defendant Thomas, as a courtesy and a follow up. Grievance Coordinator Mr. J. Valenzuela, impeded upon Plaintiff Baskin's ability to exhaust His available administrative remedies through the grievance procedure.

79.   On the above date Plaintiff Baskin, conversed with Kilo Alpha Case Manager Mr. J. Vasquez in regard to Grievance Coordinator Mr. J. Valenzuela's reasoning for not communicating with Me in reference to the Grievance Defendant Thomas, stated was on his desk. Case Manager J. Vasquez stated that he could not provide Plaintiff Baskin with a definitive answer.

80.   Plaintiff Baskin then asked Case Manger Mr. J. Vasquez, if he would at least contact Defendant Thomas, via facility phone, Mr. J. Vasquez, then stated that he is not authorized to communicate with Warden/Defendant Thomas, further stating that he would ask his supervisor Unit Manager Mr. J. Alexander, if he would grant My request to contact Defendant Thomas.

81.   Upon conversing with Case Manager Mr. J. Vasquez, Unit Manager Mr. J. Alexander, appeared at the dinning hall, Plaintiff Baskin then informed Unit Manager Mr. J. Alexander about the Premises of the conversation between Him and Mr. Vasquez, Mr. Alexander, predicated that he would have to receive authorization from his Boss, Chief of Unit Management Mr. Nathan Carrier, in order to contact Defendant Thomas.

82.   Plaintiff Baskin, also inquired with Unit Manager Mr. J. Alexander, if he could assist Him in obtaining a copy of the the  Emergency 14-5B Grievance filed on November 16, 2019, and a copy of the Emergency Kansas Department of Corrections Grievance filed on November 14, 2019,  Scanned and E-filed to Unit Team Supervisor Mr. M. Lamb at Hutchinson Correctional Facility Central. Unit Manager Mr. J. Alexander provided Plaintiff Baskin with a copy of the E-filed Grievance, and then asked Plaintiff Baskin, if he had a copy of the Grievance, filed at Saguaro, Plaintiff Baskin. responded he possessed a hand written rough draft, but the original was type written. Mr. J. Alexander, then responded that before he departs from Saguaro that he would give Me an answer, Mr. J. Alexander, departed from work without providing Plaintiff Baskin an answer.

83.   During Evening Meal Line Plaintiff Baskin conversed with CoreCivic/Saguaro Correctional Center, Assistant Warden Mr. Jody Bradley, providing him with the premises of the Grievance filed on November 16, 2019 and deposited in the Mail Box addressed to Warden/Defendant Thomas, Mr. J. Bradley stated that he would communicate with Defendant Thomas, further stating that Defendant Thomas is an honest man with integrity, whon would return the Grievance to Plaintiff Baskin answered.

84.   Also present were Assistant Chief of Security Mr. Fraizer, whom also stated that he would communicate with Defendant Thomas as well. Mr Frazier then requested My prison identification card and snapped a picture of it with his cell phone, and assured Me that He would also contact

3-K

Grievance Coordinator Mr. J. Valenzuela, None of the Assertions made by Mr. Frazier or Bradley ever Materialized.

85.   On December 23, 2019, at approximately 10:40 a.m., during Saguaro Correctional Center Lunch Lock down for Count, Plaintiff Baskin, observed Grievance Coordinator Mr. J. Valenzuela conducting an interview with a (KDOC) Inmate regarding a Grievance. Plaintiff Baskin, attempted to garner the attention of Kilo Alpha Case Manager(s) F. Landavazo and Mr. J. Vasquez, to evidence My intent to communicate with Mr. J. Valenzuela, due to the nature he is the authorized staff official responsible for all Grievances deposited inside the Grievance Mail Box.

86.   Case Manager Mr. F. Landavazo, directed Mr. J. Valenzuela, to Plaintiff Baskin's cell, upon approaching cell KA-04, Mr. J. Valenzuela, immediately stated in an angry, aggressive, unprofessional manner, that he did not want to talk to Plaintiff Baskin, and redirected his walk path to the exit door of Kilo Alpha cellhouse, again impeding the exhaustion of the available administrative remedies through the prison grievance system.

87.   On December 30, 2019, during a town hall meeting in Kilo Alpha Unit, whereupon Plaintiff Baskin, approached Defendant Thomas, whom before Plaintiff Baskin could speak, answered that He already replied to the Grievance filed on November 16, 2019 and that Plaintiff Baskin should have already received a copy of the said Grievance. Defendant Thomas,  then went on to state, that he already took care of the situation about the injuries to Plaintiff Baskin's wrists', further stating that every time He sees Plaintiff Baskin, That Baskin cannot restrain from asking about the Grievance assosicated with his wrists', while simutaneously patting Plaintiff Baskin, on the back several times while eliciting the following statements: "I'll tell you what Mr. Baskin, the next time you ask me about that Grievance, I'm going to put you in Segregation, and write your ass up for Hindering, But you know what Mr. Baskin, consider yourself lucky that it's almost New Years, Happy New Year!, and don't ask me about that grievance anymore."

88.   In attendance and witnesses to the entire converation between Plaintiff Baskin, and Defendant Thomas, were Declarant(s) Amman-Rue El, Colbert, and Kennon, whom Defendant Thomas, Placed in Segregation for asserting that he had Plaintiff Baskin's back. Defendant Thomas, chased Declarant Kennon, down and told him to mind his own F-ing business, which in turn led up to Declarant Kennon being placed in segregation.

89.   Plaintiff Baskin, on October 23, 2019 thru November 16, 2019 satisfied the Kansas Department of Corrections Informal Resolution Requirements upon communicating with the following Kansas Contract Monitor(s): Secretary of Corrections Mr. Jeff Zmuda, Deputy Secretary of Corrections Mr. Joel Hrabe, Ms. Melissa Waldock, Mr. K. Scmidt, Mr. B. Walmsley, Ms. Carolyn Graves, Ms. J. Perkins, Ms. Lindsey Wildermuth, Mr. Moore, and Mr. Loomis, prior to proceeding with the Kansas Department of Corrections Inmate Grievance Procedure to meet the Exhaustion Requirements of Available Administrative  Remedies Pursuant to 42 U.S.C.A. § 1997 e(a) & 1997 e(e) before filing 42 U.S.C. § 1983 under Eighth Amendment Violation(s) for Cruel & Unusual Punishment, Unnecessary Wanton Infliction of Pain, and Mental/Emotional Injury stemming from the Physical injury sustained from the Wrist Restraints.

90.   Plaintiff Baskin used the Grievance Procedure available at the Kansas Department of Corrections via Hutchinson Correctional Facility Central, Titled Kansas Department of Corrections Inmate Grievance Form. Plaintiff Baskin presented the facts relating to this complaint on November 14, 2019 to try to resolve the Eighth Amendment Violation(s), but received no answer within the 10 calendar day response from Unit Team, as well as the 10 calendar day response from Warden Mr.

Daniel Schnurr at Hutchinson Correctional Facility Central.

91.   Plaintiff Baskin, originally submitted the Kansas Department of Corrections Grievance Form to Kilo Alpha Unit Manager Mr. J. Alexander, to be processed and scanned to Hutchinson Correctional Facility Central on November 14, 2019. When Plaintiff Baskin did not receive a timely response from Unit Manager Mr. J. Alexander, it was indicative that Plaintiff Baskin needed to present and submit his Grievance to a Kansas Contract Monitor.

92.   At the first available opportunity Plaintiff Baskin, presented the Kansas Department of Corrections Grievance Form to Kansas Contract Monitor Ms. Lindsey Wildermuth, on December 3, 2019 to be electronically scanned and transmitted to the Kansas Department of Corrections / Hutchinson Correctional Facility Central to be processed by the authorized Unit Team and Warden.

93.   Upon expiration of the answer/appeal time period, Plaintiff Baskin, then conversed with Kansas Contract Monitor Mr. Moore, on December 30, 2019, whom stated that authorization was confirmed for Plaintiff Baskin to proceed with the next phase for any further legal proceedings deemed necessary, due to the nature that the time limit to answer and appeal the Grievance had expired, and further that the Administration seemingly did not care to entertain or answer the Grievance.

94.   Plaintiff Baskin, will submit the Kansas Department of Corrections "Emergency" Grievance Form and Affidavit, upon advisement of the Court and/or Counsel.

## H.   LEGAL CLAIMS

95.   Plaintiff Baskin, re-alleges and incorporate by reference, paragraphs 1-65.

96.   Defendant Giaboian and Defendant Diaz, directly participated in the decision to loosen the physical wrist restraints and/or whether to replace them with larger cuffs, as both Defendant(s) observed that the cuffs were too small. Defendant Giaboian sarcastically stated the restarinst are not built for comfort and encouraged the illegal act of cruel & unusual punishment, and an unnecessary wanton infliction of pain. Both Defendant Giaboian and Defendant Diaz, were grossly negligent in ensuring the physical transfer restraints were in complince with safety specifications to prevent injuries from occurring to Plaintiff Baskin.

97.   Defendant Westbrook and Unknown employee directly paticipated in the decision whether to loosen the physical wrist restraints on Plaintiff Baskin and/or replcae them with larger cuffs, or zip tie restraints.

98.   Defendant Westbrook, observed the enormous swelling of Plaintiff Baskin arms and lacerations on both of His wrists' and failed to do anything to fix the situation. The Unknown employee requested and advised Defendant Westbrook that He needed some "Big Boy Cuff", Defendant Westbrook, then stated that he did not have any "Big Boy Cuffs", and if Plaintiff Baskin, said one more word about the cuffs that he would not re-adjust the cuffs to just one click.

99.   Defendant Westbrook, created a situation which encourages the illegal act of cruel & unusual punishment, unnecessary wanton infliction of pain, and deliberate indifference. Defendant Westbrook was grossly negligent in managing the people he was suppose to be supervising and is liable for their actions.

100.   Defendant Walker, observed the massive and enormous swelling of Plaintiff Baskin's arms and wrists', as well as the cuts and bleeding, but refused to administer any type of antibiotic ointment, bandages and/or gauze to prevent infection or tearing of the skin on both wrists' and refused to document Plaintiff Baskin's injuries via photo and/or anatomical drawings.

101.   Defendant Gottfredson, was grossly negligent for the extensive delay in the scheduling of Plaintiff Baskin's sick call request for a face to face encounter appointment, Plaintiff Baskin submitted several 13-80A3 Sick Call Request for Face to Face Encounter Forms on October 26, 2019, and on November 1, 2019.

102.   On November 15, 2019, Plaintiff Baskin received a pass for a Face to Face appointment, whereupon He reported to the CoreCivic/Saguaro Correctional Center Clinic at approximately 6:10 a.m., upon being screened by Defendant Gottfredson, she refused to take photo's of Plaintiff Baskin's injuries, as well as take measurements of the injuries to acurately depict them in the Anatomical Drawings. Defendant Gottfredson, further stated that the injuries were past the point to receive Medical Treatment; Therefore, Bandages/Gauze and Antibiotic Ointment would serve no purpose, due to the nature the injuries were already self healing.

103.   Plaintiff Baskin, asked Defendant Gottfredson how to properly spell her name for documentation purposes, She rudely in an unprofessional manner stated that Plaintiff Baskin did not need to know how to spell Her name, upon CoreCivic Health Services Personnel hearing the exchange between Plaintiff Baskin and Defendant Gottfredson, She was excused from the screening room whereupon She returned and took measurements of Plaintiff Baskin's injuries, documenting them on Form 13-71A2 Abrasions/Lacerations and 13-34A2 Facility Emergency Anatomical Form, and on a new and seperate 13-80A3 Sick Call Request-Face to Face Encounter Form, under Disposition Part C: and Part D: Advised to return to medical if condition worsens in any way.

104.   Plaintiff Baskin, then made a request to Defendant Gottfredson to obtain copies of the Anatomical Drawings, whereupon she refused to comply with Plaintiff Baskin's request. Plaintiff Baskin, previously received information from Assistant Warden Mr. Jody Bradley, whom directed him to submit an inmate request form to CoreCivic Health Services Administrator Ms. E. Barajas to receive copies of the Anantomical Drawings.

105.   On November 20, 2019, Plaintiff Baskin, submitted the inmate request form to CoreCivic Health Services Administrator Ms. E. Barajas, whom responded on December 5, 2019 that an appointment has been made to receive copies.

106.   On December 6, 2019 Plaintiff Baskin, was directed to report to CoreCivic Health Services Clinic, whereupon He was screened by CoreCivic Health Services Staff Member Ms. A. Thronesbery, whom provided Plaintiff Baskin with Form(s) 13-71A & 13-34A2 indicative of the injuries.

107.   By witnessing Defendant Thomas' illegal action of authorizing the denial of medical treatment through deliberate indifference and failure to provide documentation of Plaintiff Baskin's injuries and further failing to correct the misconduct of his employees and encouraging the continuation of misconduct via, Medical Provider(s): Defendant Walker, Defendant Gottfredson, and Prison Official(s): Assistant Warden Mr. Jody Bradley, Captain Franco, Security Threat Group LT. A. Perez, Case Manager(s) Mr. J. Vasquez, and Mr. F. Landavazo, Unit Manager Mr. Jim Alexander, and Grievance Coordinator Mr. J. Valenzuela, who also caused the violation of Plaintiff Baskin's

Rights under the Eighth Amendment to the United States Constitution causing Plaintiff Baskin pain, suffering, physical injury, and mental/emotional distress.

108. By threatening Plaintiff Baskin, with retaliation of segregation and disciplinary action for exercise of his right to seek redress from the prison through the use of the Prison Grievance System, Defendant Thomas, is retaliating against Plaintiff Baskin unlawfully in violation of Plaintiff Baskin's First Amendment Right to the United States Constitution. These actions are causing Plaintiff Baskin injury to his First Amendment Right.

109. The Kansas Department of Corrections Secretary, Mr. Jeff Zmuda, Deputy Secretary, Mr. Joel Hrabe, and Kansas Contract Monitor(s): Ms. Melissa Waldock, Mr. K. Schmidt, Mr. B. Walmsley, Ms. Carolyn Graves, Ms. Lindsey Wildermuth, Ms. Sisco, Ms. J. Perkins, Mr. Loomis and Mr. Moore, visually documented Plaintiff Baskin's injuries, but failed to address Defendant Thomas, and the CoreCivic Health Services Staff to correct their misconduct of deliberate indifference and denial of medical assistance to Plaintiff Baskin.

110. By refusing to address and answer Plaintiff Baskin's grievance form for exercise of his right to seek redress from the Kansas Department of Corrections through the use of the Prison Grievance System, Defendant Mr. Daniel Schnurr, Warden of Hutchinson Correctional Facility Central, is retaliating against Plaintiff Baskin, unlawfully in violation of Plaintiff Baskin's First Amendment Right to the United States Constitution. These actions are causing Plaintiff Baskin injury to his First Amendment Right.

111. Plaintiff Baskin, has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff Baskin, has been and will continue to be irreparably injured by the conduct of the Defendant(s), unless this Court grants the declaratory relief which Plaintiff Baskin seeks.

## I.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff Baskin, respectfully pray that this Court enter judgment:

112. Granting Plaintiff Baskin a declaration that the acts and omissions described herein violates his rights under the Constitution and Laws of the United States, and

113. A preliminary and permanent injunction ordering Defendant(s) Thomas, S.O.R.T. Officer Giaboian, S.O.R.T. Officer Diaz, and Westbrook, to cease their physical violence and threats toward Plaintiff Baskin, and

114. Granting Plaintiff Baskin, Compensatory damages in the amount of $50,000.00 against each defendant jointly and severally,

115. Plaintiff Baskin, seeks Compensatory damages against defendant Thomas only.

116. Plaintiff Baskin, seeks Punitive damages in the amount of $50,000.00, Plaintiff Baskin seeks these damages against each defendant jointly and severally.

117. Plaintiff Baskin, also seeks a Jury Trial on all issues triable by jury.

118.  Plaintiff Baskin, also seeks recovery of the cost in this suit, and

119.  Any additional relief this Court deems just proper and equitable.

Dated:  October 22, 2021

*Benton G. Baskin*
Benton G. Baskin, I/M #52888
Plaintiff Pro se

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd  day of ___October___ 20 _21_ . a true and correct copy of the foregoing Civil Rights Complaint By A Prisoner, was made by depositing the same in the United States Mail, postage prepaid address to the following:

Mr. Todd Thomas, Regional Director
CoreCivic/Saguaro Correctional Center
1250 E. Arica Road
Eloy, Arizona 85131

Ms. Marci Gottfredson, RN
CoreCivic/Saguaro Correctional Center
1250 E. Arica Road
Eloy, Arizona 85131

Mr. Gerald Walker, LPN
CoreCivic/Saguaro Correctional Center
1250 E. Arica Road
Eloy, Arizona 85131

Mr. Westbrook, Supervisor
TransCorp. of America
646 Melrose Ave.
Nashville Tennessee 37211

Mr. Daniel Schnurr, Warden
Hutchinson Correctional Facility Central
500 S. Reformatory Road
Hutchinson, Kansas 67504

Mr. Diaz, S.O.R.T. Officer
Hutchinson Correctional Facility Central
500 S. Reformatory Road
Hutchinson, Kansas 67504

Mr. Giaboian, S.O.R.T. Officer
Hutchinson Correctional Facility Central
500 S.  Reformatory Road
Hutchinson, Kansas 67504

*Benton G. Baskin*
Benton G. Baskin, I/M #52888
Plaintiff Pro se

## COUNT II

1.   State the constitutional or other federal civil right that was violated:   <u>Eighth Amendment to the</u>
<u>United States Constitution</u>.

2.   **Count II.**   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
☐ Basic necessities          ☐ Mail                    ☐ Access to the court     ☐ Medical care
☐ Disciplinary proceedings   ☐ Property                ☐ Exercise of religion    ☐ Retaliation
☐ Excessive force by an officer   ☐ Threat to safety   ☒ Other: <u>Cruel & Unusual Punishment</u>.

3.   **Supporting Facts.**   State as briefly as possible the FACTS supporting Count II.   Describe exactly what
**each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without
citing legal authority or arguments.
<u>See Attached Page 3-A Section F. Facts supporting</u>
<u>Count II</u>

4.   **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).
<u>Please refer to ¶. 20-45</u>

5.   **Administrative Remedies.**
a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at
your institution?                                                    ☒ Yes     ☐ No
b.   Did you submit a request for administrative relief on Count II?          ☒ Yes     ☐ No
c.   Did you appeal your request for relief on Count II to the highest level?   ☐ Yes     ☒ No
d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you
did not.   <u>Defendant Thomas and Schnurr, Impeded the Saguaro Correctional Center</u>
<u>14-5B Grievance and Appeal Procedure, and (KDOC) Grievance and Appeal Procedure</u>.
See ¶. 70-94 Section G. Exhaustion of Administrative Remedies.

4

## COUNT III

1.   State the constitutional or other federal civil right that was violated:   <u>Eighth Amendment to the</u>
<u>United States Constitution</u>.

2.   **Count III.**   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
   ☐ Basic necessities          ☐ Mail              ☐ Access to the court        ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion       ☐ Retaliation
   ☐ Excessive force by an officer   ☐ Threat to safety   ☒ Other: <u>Deliberate Indifference</u>.

3.   **Supporting Facts.**   State as briefly as possible the FACTS supporting Count III.   Describe exactly what
**each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without
citing legal authority or arguments.
                          <u>See Attached Page 3-F Facts supporting</u>
<u>Count III ¶. 61-111</u>

4.   **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).
                 <u>Please refer to ¶. 20-45</u>

5.   **Administrative Remedies.**
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at
        your institution?                                                    ☒ Yes    ☐ No
   b.   Did you submit a request for administrative relief on Count III?      ☒ Yes    ☐ No
   c.   Did you appeal your request for relief on Count III to the highest level?   ☐ Yes    ☒ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you
        did not.   <u>See Section G. Exhaustion of Administrative Remedies ¶. 70-111</u>.

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

5

### E.   REQUEST FOR RELIEF

State the relief you are seeking:   Please See Section I. Request For Relief ¶. 112-119
Page 3-0

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _October 88, 8081_                                 _Benton G. Bass_
                           DATE                                                SIGNATURE OF PLAINTIFF


_____N/K_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


_____
(Signature of attorney, if any)


_____
(Attorney's address & telephone number)


### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

Benton G. Baskin, I/M #52888
Hutchinson Correctional Facility Central
P.O. Box 1568
Hutchinson, Kansas 67504
Phone: (620)-625-7284
Fax:    (620)-728-3473
E-mail: www.gettingout.com
Plaintiff-Pro se


October 21st, 2021


Brian D. Karth
District Court Executive / Clerk of Court
Sandra Day O'Connor U.S. Courthouse
               Suite 130
401 West Washington Street, SPC 1
Phoenix, Arizona 85003-2118


Re: Civil Rights Complaint By A Prisoner Pursuant to 42 U.S.C. Section 1983


Dear Mr. Karth:

          Please find enclosed the Original plus one Copy of Civil Rights Complaint By A Prisoner Pursuant to 42 U.S.C. § 1983, Motion For Appointment of Counsel, and Application For Leave to Proceed with a (Non Habeas) Civil Action in Federal Court In Forma Pauperis Pursuant to 28 U.S.C. § 1915.

          Also, be advised that the Application For Leave to Proceed with a (Non Habeas) Civil Action in Federal Court In Forma Pauperis Pursuant to 28 U.S.C. § 1915, Must be sent to Ms. Melissa Brooke, Business Manager, (KDOC) Kansas Department of Corrections Centralized Inmate Banking, P.O. Box 9101, Topeka, Kansas 66608.

          Your Prompt attenton in regard to filing the Complaint will be greatly appreciated, Thank You, for Your Time and Consideration.


Sincerely,

Benton G. Baskin, I/M #52888
Plaintiff-Pro se


cc: file

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to the matters alleged on information and belief, and as to those, I believe them to be true, I certify under penalty of perjury that the foregoing is true and correct.

Executed at : Hutchinson, Kansas on October 21, 2021

Benton G. Baskin, I/M #52888
Plaintiff-Pro se

STATE OF KANSAS   )
                  )   SS:   AFFIRMATION
COUNTY OF RENO   )


    I, the undersigned, being duly sworn upon my oath, depose and state that I have subscribed to the foregoing Civil Rights Complaint By A Prisoner; that I know the contents thereof; that it includes every ground known to me under the Eighth Amendment of the United States Constitution Rights Violation(s) for Cruel and Unusual Punishment, Deliberate Indifference, Denial of Medical Care, and Mental/Emotional Injury, attached to this Complaint; and that the matters and allegations therein set forth are true.


                                                    *Benton G. Bass*
                                                Signature

                                                Hutchinson Correctional Facility
                                                Address

                                                P.O. Box 1568

                                                Hutchinson, Kansas 67504
                                                City State, Zip

STATE OF KANSAS   )
                  )   SS:   NOTARIZATION
COUNTY OF RENO    )


SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public in and for the above State

and County, on this __22nd__ day of ___October___, 20 _21_ .


_____
Notary Signature

_____
Notary Printed

_____
County of Residence

LEO C. DURAN
Notary Public - State of Kansas
My Appt. Expires 8/24/2022

_____
Date My Commission Expires