Daniel P. Struck, Bar No. 012377
Dana M. Keene, Bar No. 033619
Courtney Lacaillade, Bar No. 035573
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
dstruck@strucklove.com
dkeene@strucklove.com
clacaillade@strucklove.com

*Attorneys for Defendant Westbrook*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Benton Gene Baskin, <br><br> Plaintiff, <br><br> v. <br><br> Todd Thomas, et al., <br><br> Defendants. | NO. CV 21-01890-PHX-SPL (JFM) <br><br> **DEFENDANT WESTBROOK'S MOTION TO DISMISS** |

Defendant Westbrook moves to dismiss the Complaint because it is time barred under the applicable statute of limitations. Additionally, the Complaint should be dismissed for lack of personal jurisdiction and improper venue.[1] *See* Fed. R. Civ. P. 12(b)(2), (3). This Court has neither general nor specific jurisdiction over Westbrook, who resides in Tennessee, and a substantial part of the events underlying Plaintiff's claims did not occur in Arizona.

**I.    BACKGROUND**

Plaintiff Benton Gene Baskin is a Kansas Department of Corrections ("KDC") inmate, who is currently housed at the Hutchinson Correctional Facility ("HCF") in

---

[1] Because this Motion to Dismiss is brought under Rules 12(b)(2) and (3), this Court can consider written materials, such as Westbrook's Declaration (attached as Exhibit A), without converting it into a motion for summary judgment. *Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.*, 252 F. Supp. 2d 917, 922 (D. Ariz. 2003).

Hutchinson, Kansas. (Dkt. 10, 12.) The claims in his Complaint arise out of injuries he allegedly received before and during his air transport from HCF to the Saguaro Correctional Center ("SCC") in Eloy, Arizona on October 23, 2019. (Dkt. 1.) He alleges that, at approximately 3:00 a.m. on that day,[2] he and several dozen other inmates were processed for their transport, and that HCF Special Operations Response Team ("SORT") Lieutenant Giaboian applied waist, wrist, and leg restraints. (*Id.*, ¶¶ 18–21.) Baskin asked Giaboian if he would loosen the restraints, but Giaboian refused. (*Id.*) After boarding the KDC transport vehicle at HCF, Baskin asked HCF SORT Officer Diaz if he would loosen his restraints, but Diaz ignored his request. (*Id.*, ¶ 22.) Baskin alleges that he continued to complain that the restraints were too tight and caused him pain to Lt. Giaboian, Officer Diaz, and other HCF officers during their commute to, and brief stay at, the El Dorado Correctional Facility and the subsequent commute to the airport in Salinas, Kansas, where they arrived at approximately 8:00 a.m. (*Id.*, ¶¶ 23–38; Ex. A, ¶ 22.)

At the Salinas airport, Baskin was transferred into the custody of TransCor America and told Westbrook, TransCor's Director of Operations, that his restraints were too tight and causing swelling.[3] (Dkt. 1, ¶¶ 39–40; Ex. A, ¶¶ 12–13, 21.) Westbrook allegedly told Baskin that his crew would evaluate the restraints once they boarded the plane.[4] (Dkt. 1, ¶¶ 40, 44.) At approximately 11:00 a.m., the plane departed Salinas and Westbrook announced that the crew would begin checking the inmates' restraints. (Dkt. 1, ¶ 47; Ex. A, ¶ 27.) Baskin alleges that Westbrook then walked down the aisle toward Baskin but ignored Baskin's plea to loosen his restraints. (Dkt. 1, ¶¶ 48–49.) Sometime later, however, Westbrook and another TransCor employee loosened Baskin's restraints, but they still caused him discomfort. (*Id.*, ¶¶ 50–56.) When the plane landed in Arizona, at approximately

---

[2] All times referenced herein are Central Standard Time.

[3] As TransCor's Director of Operations, Westbrook is responsible for overseeing inmate air transports. (Ex. A, ¶ 14.)

[4] Westbrook has no recollection of Baskin during this transport, and there is no record of Baskin requesting a restraint adjustment/modification or to see a nurse during his transport with TransCor. (Ex. A, ¶¶ 23–26.)

1:00 p.m., Baskin alleges that he "asserted to Defendant Westbrook … about the condition of his arms and wrists," and that Westbrook stated: "You will get them taken off, as soon as we get to the facility." (Dkt. 1, ¶¶ 57–58; Ex. A, ¶ 27.) Baskin arrived at SCC at approximately 3:44 p.m., and his restraints were removed. (Dkt. 1, ¶¶ 59–60, Exhibit B.)

On November 8, 2021, Baskin filed this civil rights Complaint in the District of Arizona, alleging that HCF SORT Lt. Giaboian, HCF SORT Officer Diaz, and Westbook were deliberately indifferent to his safety by failing to adjust his restraints, in violation of the Eighth Amendment.[5] (Dkt. 1.)

## II. PLAINTIFF FAILED TO FILE HIS COMPLAINT WITHIN THE TWO-YEAR STATUTE OF LIMITATIONS PERIOD.

Because 42 U.S.C. Section 1983 does not include its own statute of limitations for its claims, federal courts apply the statute of limitations governing personal injury claims in the forum state. *Finkle v. Ryan*, 174 F. Supp. 3d 1174, 1186 (D. Ariz. 2016). "In Arizona, the limitations period for personal injury claims is two years." *Id*. Federal law also governs when a Section 1983 claim accrues. *Id*. "Under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis for the action.'" *Id*. (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991–92 (9th Cir. 1999)).

In this Circuit, the prison mailbox rule applies to Section 1983 claims filed by inmates. *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009). Under the prison mailbox rule, a pro se inmate's pleading is "filed" the moment the documents are delivered to prison authorities for forwarding to the district court. *Houston v. Lack*, 487 U.S. 266, 270–71 (1988). However, "[t]he incarcerated person has the initial burden to show that he or she gave the document to prison authorities within the relevant time frame." *Franklin v. United States*, SA CR 06-0166-DOC, 2015 WL 13265918, at *6 (C.D. Cal. Jan. 12, 2015). "The burden then shifts to the [defendant] to prove that the person had not given the document to prison authorities until after the statute of limitations had run." *Id*.; *see also Ray v.*

---

[5] The Court initially dismissed Baskin's Complaint for failing to pay the filing fee but reinstated it once Baskin paid it. (Dkt. 8, 11, 12, 13.) On screening, the Court dismissed all claims except this threat-to-safety claim (Count II). (Dkt. 14.)

1  *Clements*, 700 F.3d 993, 1008 (7th Cir. 2012); *Allen v. Culliver*, 471 F.3d 1196, 1198–99
2  (11th Cir. 2006); *Caldwell v. Amend*, 30 F.3d 1199, 1203 (9th Cir. 1994).

3        Here, Baskin's alleged injuries occurred on October 23, 2019.  (Dkt. 1, ¶ 18.)  The
4  Complaint was not filed, however, until November 8, 2021, which is past the two-year
5  statute-of-limitations period.  (Dkt. 1.)  The envelope that contained Baskin's Complaint
6  has a post-marked stamp with a date of November 2, 2022.  (Dkt. 1–1.)  Thus, even giving
7  Baskin the benefit of the doubt and considering his Complaint filed as of that date, it is still
8  past the two-year statute of limitations.  Therefore, this Court should dismiss the Complaint
9  as time barred.

10  **III.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**
11

12        The Fourteenth Amendment Due Process Clause limits a court's authority to exercise
13  jurisdiction over out-of-state defendants.  *See Brink v. First Credit Res.*, 57 F. Supp. 2d 848,
14  858 (D. Ariz. 1999) ("Absent traditional bases for personal jurisdiction (physical presence,
15  domicile or consent) the Due Process Clause requires that nonresident defendants have
16  certain *minimum contacts* with the forum state such that the exercise of personal jurisdiction
17  does not offend traditional notions of fair play and substantial justice.") (citations omitted).
18  A federal court sitting in diversity applies the personal jurisdiction rules of the forum state.
19  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  Arizona's long-arm statute provides
20  for personal jurisdiction coextensive with the limits of federal due process.  *Doe v. Am.*
21  *Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citation omitted).  Thus, a federal
22  court's exercise of personal jurisdiction may not violate the defendant's federal due process
23  rights.  *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

24        "A court's exercise of personal jurisdiction over a nonresident defendant may be
25  either general or specific."  *See Doe*, 112 F.3d at 1050.  For general jurisdiction to exist, the
26  defendant must engage in "substantial" or "continuous and systematic" contacts with the
27  forum state, even if the case is unrelated to those contacts.  *Bancroft & Masters, Inc. v.*
28  *Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Specific jurisdiction exists when

a case "arises out of or relates to the defendant's contacts with the forum," and "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted). The plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Cummings v. Western Trial Lawyers Ass'n,* 133 F. Supp. 2d. 1144, 1151 (D. Ariz. 2001) (citation omitted).

    **A.**    **The Court Lacks General Jurisdiction Over Defendant Westbrook.**

General jurisdiction is inappropriate "[u]nless the defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed 'present' in that forum for all purposes." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007); *see also Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) ("[A] defendant must not only step through the door, it must also '[sit] down and [make] itself at home.'") (citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1242 (W.D. Wash. 2016) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

Westbrook is a resident of Clarksville, Tennessee; he does not reside in Arizona. (Ex. A, ¶ 3.) As TransCor's Director of Operations,[6] Westbrook is responsible for overseeing "day-to-day operations, trip activity assignments, hours of service, work schedules, and payroll." (*Id.*, ¶ 13.) Westbrook also oversees five TransCor field offices: one in Texas; one in Tennessee; one in Oklahoma; and two in Arizona. (*Id.*, ¶ 15.) Although some of his job duties involve those two field offices in Arizona, Westbrook travels to

---

[6] TransCor is a Tennessee limited liability company with its principal place of business and corporate headquarters in Nashville, Tennessee. (Ex. A, ¶ 6.)

1 Arizona less than ten times per year. (*Id.*, ¶ 17.) Moreover, Westbrook does not maintain an office in Arizona, own any property in Arizona, or travel to Arizona for personal reasons, nor does he intend to. (*Id.*, ¶ 30.)

The contact Westbrook had with Arizona was at the behest of his employer and was, at most, sporadic, minimal, and transient, and not "constant and persuasive." *Ranza*, 793 F.3d at 1069 (citations omitted). Westbrook and his team departed Tennessee on October 22, 2019, and arrived in Kansas that same day for the air transport the following day. (Ex. A, ¶ 20.) Westbrook departed Kansas on October 23, 2019, at approximately 11:00 a.m., landed in Arizona at approximately 1:00 p.m., dropped off the HCF inmates at SCC at approximately 3:45 p.m., and left Arizona the next morning (on October 24, 2019). (Ex. A, ¶¶ 27, 29; Ex. B.)

Under these facts, Baskin cannot meet the "exacting standard" required to establish general jurisdiction. *Ranza*, 793 F.3d at 1068. Nor can it be said that Westbrook's contacts with Arizona are or were so substantial, continuous, and systematic that he is deemed "present" in Arizona for all purposes. *See Schwarzenegger*, 374 F.3d at 801 ("[A] finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."). Thus, this Court does not have general jurisdiction over Westbrook.

### B. The Court Lacks Specific Jurisdiction Over Defendant Westbrook.

The Ninth Circuit applies a three-part test in determining whether the exercise of specific jurisdiction over nonresident defendants is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). The plaintiff bears the burden

of proving the first two prongs. *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). "But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Id.* (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)). For the reasons that follow, Baskin has failed to establish specific jurisdiction.

### 1. Westbrook Did Not Purposefully Direct His Activities at Arizona.

"[A]vailment and direction are, in fact, two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract, while a purposeful direction analysis is most often used in suits sounding in tort." *Id.* The Ninth Circuit analyzes "purposeful direction" under the three-part "effects" test applied in *Calder v. Jones*, 465 U.S. 783 (1984). The "effects" test requires that the defendant: (1) commit an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803 (citations omitted).

The "expressly aimed" prong is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft*, 223 F.3d at 1087. A finding of "express aiming" does not mean "that a foreign act with foreseeable effects in the forum states always gives rise to specific jurisdiction." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (quoting *Bancroft*, 223 F.3d at 1087). Instead, the Ninth Circuit has recognized that "something more" than a foreseeable effect is required to prove that a defendant "purposefully directed its activities in a substantial way in the forum state." *Pebble Beach*, 453 F.3d at 1156 (citations omitted). "Something more" is satisfied when the defendant engages in "individualized targeting" of a plaintiff in the forum state. *Id.* at 1157 (quoting *Bancroft*, 223 F.3d at 1082).

Baskin's allegations fail to meet this standard. His air transport required Westbrook to travel from his home in Tennessee to the Salina Airport in Kansas, where he oversaw an air transport of approximately 120 KDC inmates, including Baskin, from various KDC facilities to SCC in Eloy, Arizona. (Ex. A, ¶ 19.) Baskin specifically alleges that his

7

restraints were applied too tightly at HCF (in Kansas) by HCF SORT officers. (Dkt. 1, ¶¶ 19–23.) He further alleges that those officers and/or Westbrook failed to sufficiently loosen the restraints while traveling from HCF to the Salinas airport and/or while on the plane. (*Id.*, ¶¶ 18–56.) *See In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1140 (D. Nev. 2009) (defendant's mere awareness or ability to foresee in-forum effects from his out-of-forum conduct is insufficient to establish minimum contacts with the forum). The only allegation he makes against Westbrook while in Arizona is that Westbrook told Baskin that they would remove the restraints once they arrived at SCC. (*Id.*, ¶ 58.) That response was not "expressly aimed" at the forum state of Arizona.[7] *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (the mere fact that a defendant's conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction). Moreover, there is no evidence that Baskin was an Arizona resident or that Westbrook knew that he was. *Bancroft*, 223 F.3d at 1087. Baskin was one of 120 Kansas inmates being transported from a Kansas facility. Because Baskin cannot establish the first prong of the test for specific jurisdiction, the jurisdictional inquiry ends. *Schwarzenegger*, 374 F.3d at 802.

**2. Plaintiff's Claims Do Not Arise Out of or Relate to Defendant Westbrook's Forum-Related Activities.**

The Ninth Circuit utilizes a "but for" test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (citations omitted). Baskin's alleged injuries do not arise out of Westbrook's contacts with Arizona. As explained above, Westbrook did not apply Baskin's restraints and the alleged refusals to loosen them occurred outside of Arizona. Thus, specific jurisdiction fails on the second prong as well.

---

[7] TransCor was not operating under a contract with an Arizona entity at the time of the air transport. To the contrary, TransCor was acting pursuant to a contract with KDC to transport (via charter flight) approximately 120 KDC inmates from Kansas to SCC. (Ex. A, ¶ 19.)

### 3. The Exercise of Jurisdiction Does Not Comport with Fair Play and Substantial Justice.

If the first two requirements of the specific jurisdiction test are met, the defendant bears the burden of presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The Ninth Circuit considers seven factors in weighing reasonableness:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (citations omitted). No one factor is dispositive; instead, the Court balances all seven. *Id.* (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991)).

Even if this Court finds that Baskin has met his burden in satisfying prongs one and two, for the reasons that follow, the Court's exercise of jurisdiction does not comport with fair play and substantial justice and is unreasonable.

### a. Defendant Westbrook Has Not Purposefully Interjected Himself into Arizona's Affairs.

This factor is "analogous to the purposeful direction analysis." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). As discussed above, Westbrook did not purposefully direct anything at Arizona.

### b. Defendant Westbrook Will Be Greatly Burdened if This Case Is Tried in Arizona.

"A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction."

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (citations and internal quotation omitted). This burden is examined in light of the corresponding burden on Baskin. *Sinatra*, 854 F.2d at 1199.

  Subjecting Westbrook to lengthy travel to and from Arizona would detract from his personal duties at home and would separate him from critical employment duties. (Ex. A, ¶¶ 12–15.) Westbrook is TransCor's Director of Operations, and he cannot leave Tennessee for extended periods of time without severely compromising TransCor's daily operations. (*Id.*, ¶¶ 12–15.) Even though Westbrook remotely works from his home now, his job duties still require him to travel to TransCor's offices in Nashville on a regular basis, which would likely be interfered with due to any travel to Arizona regarding this case. (*Id.*, ¶ 7.) Baskin has a similar logistical burden. He is once again incarcerated at HCF. (Dkt. 12.) The burden and expenses to transport Baskin from Kansas to Arizona to litigate this case will be substantial. Nonetheless, "the law of personal jurisdiction is 'primarily concerned with the *defendant's* burden." *Ziegler v. Indian River Cty.*, 64 F.3d 470, 475 (9th Cir. 1995) (citations omitted, emphasis added).

    **c.**  **There Is Conflict with the Sovereignty of Defendant Westbrook's State of Residence.**

  Tennessee has an interest in adjudicating matters involving its residents. Tennessee also has an interest in adjudicating a dispute involving an employee of a company headquartered in Nashville. Because neither Westbrook nor TransCor reside in Arizona, this factor weighs in favor of Westbrook.

    **d.**  **Arizona Does Not Have a Great Interest in Adjudicating This Dispute.**

  Baskin is not an Arizona resident. (Dkt. 10, 12.) See Asahi Metal Industry Co., Ltd. v. Sup. Ct. of Cal., 480 U.S. 102, 114 (1987) (weak state interests where plaintiff was not a resident of the forum state). Nor is there any regulatory oversight or public policy interest in adjudicating this case in Arizona. A substantial part of the transport and the primary events underlying Baskin's claims occurred outside of Arizona. And the allegation involving Westbrook in Arizona was not

substantial. Thus, Arizona does not have a strong interest in this dispute.

### e.  Judicial Resolution in this District Is Inefficient.

This factor looks "primarily at where the witnesses and the evidence are likely to be located." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). Westbrook resides in Tennessee. (Ex. A, ¶ 3.) TransCor, which also resides in Tennessee, will have the bulk of the evidence (*id*., ¶ 11), but is outside this Court's subpoena power. *See* Fed. R. Civ. P. 45(c). Thus, the material evidence associated with Westbrook and this air transport lies elsewhere.[8]

### f.  Litigating This Case in Arizona Does Not Further Plaintiff's Interest in Convenient and Effective Relief.

Baskin is a Kansas resident, as he is currently incarcerated at HCF, and therefore, litigating this suit in Arizona does not promote his interests. Aside from his brief incarceration at SCC, Baskin has not alleged any other connection to Arizona.

### g.  Alternative Forums Exist.

Baskin "bears the burden of proving the unavailability of an alternative forum." *Harris Rutsky*, 328 F.3d at 1133–34 (citations omitted). Because an alternative forum obviously exists (Middle District of Tennessee), this factor weighs in favor of Westbrook.

## IV.  THIS CASE SHOULD BE DISMISSED BECAUSE VENUE IS IMPROPER.

Under 28 U.S.C. § 1391(b), a civil action may be brought in:

> (1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or
>
> (3) If there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[8] There will also be substantial evidence in Kansas.

|   |   |
|---|---|
| 1 | "When venue is challenged, the burden is on the plaintiff to establish that venue is proper." *Wealth Rescue Strategies, Inc. v. Thompson*, CV081700PHXDGC, CV 08-1700-PHX-DGC, 2008 WL 4447040, at *1 (D. Ariz. Oct. 1, 2008.); *see also Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Baskin alleges that venue is proper in Arizona under 28 U.S.C. § 1391(b)(2) because "it is where the events giving rise to this claim occurred." (Dkt. 1, ¶ 2.) "In determining the appropriateness of venue under subsection (2), district courts are cautioned to take the adjective 'substantial' seriously." *C.H. Robinson Co. v. Glob. Fresh, Inc.*, CV 08-2002-PHX-SRB, 2009 WL 10673422, at *7 (D. Ariz. Mar. 20, 2009) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). "For venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question." *C.H. Robinson Co.*, 2009 WL 10673422, at *7 (quoting *Gulf Ins. Co.*, 417 F.3d at 357). "Events or omissions that might have only some tangential connection with, or no real relationship to, the claims in litigation are not sufficiently 'substantial' to support venue." *Wealth Rescue Strategies*, 2008 WL 4447040, at *2 (quoting *Kelly v. Qualitest Pharms., Inc.*, No. CIV-F-06-116 AWI LJO, 2006 WL 2536627, at *8 (E.D. Cal. Aug. 31, 2006)). |

Subsection (b)(2)[9] does not apply because Arizona is not the district in which a substantial part of the events giving rise to Baskin's claims occurred. As discussed above, Baskin's claims arise out of his allegations that the restraints applied to him in Kansas caused his injuries, and that Defendants ignored his requests to loosen them in Kansas (or on the air transport). (Dkt. 1 at ¶¶ 18–47, 48–59.) The only allegation relating to Westbrook in Arizona is that he allegedly told Baskin that the restraints would be removed at SCC. (*Id.*, ¶ 58.) That was not a substantial event sufficient to support venue.

---

[9] Baskin only alleges that venue is proper under Subsection (b)(2). Subsection 1931(b)(1) is not applicable because not all defendants are residents of the same state (Arizona). Subsection (b)(3) is inapplicable because, as explained above, the District of Arizona does not have personal jurisdiction over Westbrook.

## V. CONCLUSION

For these reasons, Defendant Westbrook respectfully requests this Court to dismiss the Complaint on untimeliness grounds and for lack of personal jurisdiction, improper venue.

DATED this 3rd day of January, 2022.

                                              STRUCK LOVE BOJANOWSKI & ACEDO, PLC

                                              By   /s/ Daniel P. Struck
                                                      Daniel P. Struck
                                                      Dana M. Keene
                                                      Courtney Lacaillade
                                                      3100 West Ray Road, Suite 300
                                                      Chandler, Arizona 85226

                                               *Attorneys for Defendant Westbrook*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

N/A

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

Benton Gene Baskin, #52888
HUTCHINSON-KS-HUTCHINSON
D-1/#215
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504

*Plaintiff Pro Se*

/s/ Daniel P. Struck