SKC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Benton Gene Baskin, | No.   CV-21-01890-PHX-SPL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Todd Thomas, et al., | |
| Defendants. | |

Plaintiff Benton Gene Baskin, who is confined in the Hutchinson Correctional Facility (HCF) in Hutchinson, Kansas, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983.   Before the Court are Kansas Department of Corrections (KDOC) Defendants Giaboian and Diaz's Motion for Reconsideration (Doc. 41), and Plaintiff's Response to the Court's Order to Show Cause, in which the Court required Plaintiff to show cause why this action should be transferred to the District of Kansas instead of dismissed for lack of personal jurisdiction.  (Doc. 48.)

The Court will deny KDOC Defendants' Motion for Reconsideration, discharge Plaintiff's obligation under the Order to Show Cause, and transfer this action to the District of Kansas.

**I.     Background**

Plaintiff initiated this action in the District of Arizona based on injuries he allegedly suffered from being confined in overtight restraints during his ground and air transport from the HCF in Hutchinson, Kansas to the CoreCivic Saguaro Correctional Center (SCC)

1    in Eloy, Arizona, and from the alleged lack of medical care he received while he was

2    housed at the SCC.  (Doc. 1.)  On screening pursuant to 28 U.S.C. § 1915A(a), the Court

3    found that Plaintiff stated Eighth Amendment threat-to-safety claims against KDOC

4    Defendants Giaboian and Diaz and Trans Corporation of America Supervisor Westbrook

5    and ordered these Defendants to answer the Complaint.  (Doc. 14.)  The Court dismissed

6    Plaintiff's Eighth Amendment medical care claims against SCC medical providers for

7    failure to state a claim.  (*Id.*)

8         After screening, KDOC Defendants and Defendant Westbrook filed separate

9    Motions to Dismiss on several grounds, including lack of personal jurisdiction, lack of

10   venue, statute of limitations, and failure to exhaust.  (Docs. 20, 21.)  The Court found it

11   lacked personal jurisdiction over both sets of Defendants but that the District of Kansas

12   was an alternate available forum for Plaintiff's claims because the KDOC Defendants

13   reside in Kansas where all the allegations against them occurred, and a substantial part of

14   the events or omissions giving rise to Plaintiff's claim against Defendant Westbrook also

15   occurred in Kansas.  (*Id.* at 21−22.)  Because Plaintiff did not consent to transfer to another

16   district, and it was not clear that his claims, if originally filed in the District of Kansas,

17   would be timely, the Court ordered Plaintiff to show cause why this action should be

18   transferred to the District of Kansas instead of dismissed for lack of personal jurisdiction.

19   (*Id.* at 22−23.)

20   **II.    Motion for Reconsideration**

21        KDOC Defendants seek reconsideration of the Court's July 17, 2023 Order as to the

22   Court's denial of their Motion to Dismiss for failure to exhaust administrative remedies.

23        **A.    Governing Standards**

24             **1.    Reconsideration**

25        The Court has discretion to reconsider and vacate a prior order.  *Barber v. Hawaii*,

26   42 F.3d 1185, 1198 (9th Cir. 1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 396

27   (9th Cir. 1992).  "The Court will ordinarily deny a motion for reconsideration of an Order

28   absent a showing of manifest error or a showing of new facts or legal authority that could

1  not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1).

2  Any motion for reconsideration must specifically identify the matters that were overlooked

3  or misapprehended by the Court. *Id.* If any new matters are being brought to the Court's

4  attention for the first time, the movant must identify the reasons they were not presented

5  earlier, and any specific modifications being sought in the Court's Order. *Id.* No motion

6  for reconsideration of an Order may repeat any oral or written argument made in support

7  of or in opposition to the motion that resulted in the Order. *Id.*

8  **2. Exhaustion**

9  Under the Prison Litigation Reform Act, a prisoner must exhaust "available"

10  administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a);

11  *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926,

12  934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in

13  accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

14  Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523

15  (2002), regardless of the type of relief offered through the administrative process, *Booth v.*

16  *Churner*, 532 U.S. 731, 741 (2001).

17  In a limited number of cases, the failure to exhaust may be clear from the face of

18  the complaint; however, "such cases will be rare because a plaintiff is not required to say

19  anything about exhaustion in his complaint." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th

20  Cir. 2014); *see Jones v. Bock*, 549 U.S. 199, 216 (2007) (failure to exhaust is an affirmative

21  defense and a prisoner is not required to plead or demonstrate exhaustion in the complaint).

22  In the rare case where failure to exhaust is clear from the face of the complaint, the

23  defendant may move to dismiss under Rule 12(b)(6). *Albino*, 747 F.3d at 1169. To

24  properly be considered on a Rule 12(b)(6) motion, the nonexhaustion defense must raise

25  no disputed issues of fact. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

26  **B. Discussion**

27  In its July 17, 2023 Order, the Court took judicial notice that, to complete the KDOC

28  administrative grievance process, a prisoner must first attempt informal resolution with

1    unit team members.  Kan. Admin. Regs. § 44-15-101(b).  If this attempt fails, the formal

2    grievance process contains three additional levels of review: (1) submit a grievance to a

3    unit team member, (2) submit a grievance to the facility warden, and (3) appeal to the

4    Kansas Secretary of Corrections.  *Id.* § 44-15-101(d).

5           Plaintiff alleged in his Complaint that, from October 23, 2019 through November

6    16, 2019, he "satisfied the [KDOC] Informal Resolution requirements," and on November

7    14, 2019, he filed an Inmate Grievance but received no response within the timeframe

8    required for a response. (Doc. 1 ¶¶ 89−90.)  Because he did not receive a response, Plaintiff

9    believed he needed to resubmit his grievance through a KDOC "Contract Monitor" to have

10   it scanned and transmitted, which he did by giving the grievance to Contract Monitor

11   Lindsey Wildermuth.  (*Id.* ¶¶ 91−92.)  After the time for an answer/appeal again expired

12   without a response, Plaintiff spoke to Contract Monitor Mr. Moore, and Mr. Moore told

13   Plaintiff he could proceed to "the next phase for any further legal proceeding deemed

14   necessary, due to the nature that the time limit to answer and appeal the Grievance had

15   expired; and further that the Administration seemingly did not care to entertain or answer

16   the Grievance." (*Id.* ¶ 93.)

17          In their Motion to Dismiss, KDOC Defendants argued it was clear on the face of the

18   Complaint that Plaintiff completed only the first two steps of the four-step KDOC

19   grievance process and therefore did not exhaust his administrative remedies before filing

20   this action.  (*See* Doc. 22 at 12.)  The Court rejected this argument on the ground that a

21   prisoner is only required to exhaust such administrative remedies as are "available" to him.

22   42 U.S.C. § 1997e(a); *Vaden*, 449 F.3d at 1050; *Brown*, 422 F.3d at 934−35, and it found

23   that the lack of response both times Plaintiff attempted to submit a KDOC grievance from

24   SCC raised questions of fact whether the KDOC administrative remedy process was

25   effectively available to Plaintiff.  (Doc. 40 at 19.)  The Court further found that

26                   Plaintiff appears to allege that Moore told him he did not need
27                   to continue the administrative grievance process before
                     pursuing legal action, which also raises factual issues about
28                   whether administrative remedies were available to Plaintiff to
                     grieve the alleged actions of KDOC Defendants and whether

Plaintiff was misinformed by a corrections official about what he needed to do to exhaust. *See Brown*, 422 F.3d at 937 ("information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, 'available'") (internal citation omitted).

(*Id.* at 19.)

In their "Memorandum" in support of their Motion for Reconsideration, KDOC Defendants cite to Tenth Circuit precedent for the proposition that, when a regulation explicitly provides for an appeal after a failure to respond, as they argue Kansas Administrative Regulations § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), and (c)(1)) do, administrative remedies are considered available. (Doc. 42 at 2−3 (citing *Jernigan v. Satchel*, 304 F.3d 1030, 1032−33 (10th Cir. 2002) and other cases).) They argue that, because Plaintiff's conversation with Contract Monitor Moore occurred after the time for an answer/appeal had already expired, Mr. Moore's statements to Plaintiff are irrelevant because Plaintiff had already failed to exhaust. (Doc. 42 at 3.)

These arguments are unpersuasive because it is not clear from the face of the Complaint that Plaintiff had access to KDOC's administrative remedy process or applicable instructions/regulations concerning how to utilize that process while housed in an out-of-state facility—including the timeframes for submitting grievances and appeals and, more specifically, what to do if he did not receive a response. As the Court noted in its prior Order, "information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, 'available.'" *See Brown*, 422 F.3d at 937 (internal citation omitted). KDOC's citation to Kansas Administrative Regulations and Tenth Circuit precedent is insufficient to make this showing because it is not evidence of what information Plaintiff had available to him at SCC. Moreover, Plaintiff's allegations about his experiences attempting to use KDOC's administrative remedy process while at SCC create questions of fact whether Plaintiff's grievance documents were ever forwarded to KDOC. Plaintiff's allegations that, after he did not receive a response to his first grievance, he "believed" he needed to resubmit his grievance through a KDOC Contract Monitor also suggest that Plaintiff was left to guess about what

1   he was required to do to pursue his administrative remedies in this situation.  In summary,

2   the bare facts in Plaintiff's Complaint regarding his attempts to exhaust are insufficient to

3   show beyond dispute that administrative remedies were available to Plaintiff, and dismissal

4   for failure to exhaust at this stage is not warranted.  *See Scott*, 746 F.2d at 1378.

5           To the extent KDOC Defendants argue that binding Tenth Circuit precedent shows

6   the District of Kansas will have to dismiss this case for failure to exhaust, making transfer

7   improper, this argument also fails.  In *Jernigan*, upon which KDOC Defendants primarily

8   rely, the plaintiff, as here, filed a grievance and did not receive a response; then, when he

9   attempted to appeal, the appeal was rejected because there was no response, and the

10   plaintiff was given ten days to resolve this deficiency, but he did not do so.  304 F.3d at

11   1032.  In finding that the plaintiff failed to exhaust, the Tenth Circuit relied on instructions

12   the Director provided to the plaintiff on appeal, stating he had ten days to resolve the lack

13   of response, and on the grievance policy, itself, which the court found, "contains time limits

14   on responses, and also provides that if an inmate does not receive a response from the

15   warden within thirty days after submission of the grievance, the inmate may send the

16   grievance with evidence of its prior submission to an administrative review authority." *Id.*

17   at 1032−33.  None of these facts are evident here from the face of Plaintiff's Complaint.  It

18   is not clear, for instance, what KDOC policy stated at the relevant time, whether Plaintiff

19   had access to written or electronic versions of that policy while at SCC, or, barring this,

20   whether Plaintiff was reliably informed by KDOC staff about how to pursue that process.

21   Because these facts are not clear on the face of the Complaint, this is not one of the rare

22   cases where courts can decide the exhaustion on a motion to dismiss, and transfer to another

23   district at this juncture is not improper.  In any case, following transfer, KDOC Defendants

24   will have the opportunity to litigate this issue on summary judgment, and the District of

25   Kansas, which has personal jurisdiction over Defendants, is an appropriate forum to

26   consider their arguments.  KDOC Defendants' Motion for Reconsideration is denied.

27   **III.    Transfer to the District of Kansas**

28           The Court already found in its July 17, 2023 Order and Order to Show Cause that

1   the District of Kansas has personal jurisdiction over Defendants in this action. (*See* Doc. 40

2   at 21−21.)   Transfer is therefore appropriate if this action would have been timely if

3   Plaintiff had filed it in the District of Kansas on the date he filed it in this Court. *See Hays*

4   *v. Postmaster Gen. of U.S.*, 868 F.2d 328, 331 (9th Cir. 1989).

5         For § 1983 claims, federal courts apply the statute of limitations governing personal

6   injury claims in the forum state, "along with the forum state's law regarding tolling,

7   including equitable tolling, except to the extent any of these laws is inconsistent with

8   federal law." *Butler v. Nat' l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir.

9   2014) (citation omitted).   In his Response to the Court's Order to Show Cause, Plaintiff

10  cites to Kansas law to show that the period of limitations for a personal injury claim is two

11  years.  (Doc. 48 at 5; *see* Kan. Stat. § 60-513 (a)(4).)

12        Plaintiff's claims in this action accrued on October 23, 2019 because that is when

13  his alleged injuries occurred and were known to him. *TwoRivers v. Lewis*, 174 F.3d 987,

14  991 (9th Cir. 1999) (Under federal law, a claim accrues "when the plaintiff knows or has

15  reason to know of the injury which is the basis of the action").   Absent tolling, Plaintiff

16  therefore had until October 23, 2021 to file his Complaint.   In prisoner cases, the Court

17  goes by the date the Complaint was mailed, *see Douglas v. Noelle*, 567 F.3d 1103, 1107

18  (9th Cir. 2009; *Houston v. Lack*, 487 U.S. 266, 270–71 (1988), and, as previously discussed

19  in the Court's July 17, 2023 Order and Order to Show Cause, the postmark on Plaintiff's

20  Complaint in this action was November 2, 2021, ten days after the two-year limitations

21  period elapsed.  (*See* Doc. 40 at 20.)

22        Defendant Westbrook previously argued in his Motion to Dismiss that these facts

23  meant Plaintiff's claims were untimely and must be dismissed (*see* Doc. 20 at 4), but the

24  Court rejected that argument, noting that Westbrook had failed "to account for any time in

25  which the statute of limitations was tolled during the mandatory exhaustion of

26  administrative remedies."  (Doc. 40 at 20). *See Brown*, 422 F.3d at 943 ("[W]e agree with

27  the uniform holdings of the circuits that have considered the question that the applicable

28  statute of limitations must be tolled while a prisoner completes the mandatory exhaustion

1    process"). Plaintiff now relies on the Kansas Supreme Court's Administrative Order 2020

2    PR 032 and subsequent administrative orders from April 3, 2020 to April 15, 2021, which

3    suspended the statute of limitations from March 19, 2020 to April 15, 2021 due to the

4    COVID-19   pandemic.      (Doc. 48   at   6;   *see*   https://www.kscourts.org/Rules-

5    Orders/Orders/Admin-Orders/2020-PR-016,   2020-PR-032,   2021-PR-020.)     Plaintiff

6    argues that this shows the limitations period was tolled for a total of 147 days during the

7    running of the statute of limitations for his claims, meaning his filing of this action would

8    have been timely filed if filed on the same date in the District of Kansas. (Doc. 48 at 6.)

9           As with failure to exhaust, the running of the statute of limitations is an affirmative

10   defense, which must be pleaded and proven, and it only applies at the pleading stage where

11   the running of the statute is clear on the face of the complaint. *Jablon v. Dean Witter &*

12   *Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Because either tolling for exhaustion of

13   administrative remedies or tolling for Kansas's suspension of the statute of limitations

14   during the COVID-19 pandemic would render Plaintiff's claims timely if they had been

15   filed in the District of Kansas, and the Court has no basis to find otherwise at this juncture,

16   transfer is appropriate, and the Court will transfer this action to the District of Kansas.

17          **IT IS ORDERED:**

18          (1)     The reference to the Magistrate Judge is **withdrawn** as to KDOC

19   Defendants' Motion for Reconsideration (Doc. 41), and the Motion is **denied**.

20          (2)     Plaintiff's obligation to respond to the Court's Order to Show Cause

21   (Doc. 40) is **discharged**.

22   . . . .

23   . . . .

24   . . . .

25   . . . .

26   . . . .

27

28

1          (3)     The Clerk of Court must **transfer** this action to the United States District

2    Court for the District of Kansas pursuant to 28 U.S.C. § 1406(a).  The Clerk of Court must

3    **close** this case.

4          Dated this 21st day of September, 2023.

Honorable Steven P. Logan
United States District Judge